UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOCUSED IMPRESSIONS, INC. AND <br> FOCUSED IMPRESSIONS TECHNOLOGY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE SOURCING GROUP, LLC, <br><br> Defendant. <br><br> THE SOURCING GROUP, LLC, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CRAIG STOCKMAL, <br><br> Third-Party Defendant. | Civil Action No. 19-cv-11307-ADB |

## MEMORANDUM AND ORDER ON
## PLAINTIFFS' MOTION TO PARTIALLY DISMISS COUNTERCLAIM AND
## THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

BURROUGHS, D.J.

Focused Impressions, Inc. ("FII") and Focused Impressions Technology, LLC ("FIT") (collectively, "Plaintiffs"), brought this action against The Sourcing Group, LLC ("TSG") alleging breach of contract and unfair and deceptive practices. [ECF No. 1-1 at 5, 16]. TSG brought counterclaims against Plaintiffs, including breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, action for accounting, and unjust enrichment. [ECF No. 16]. TSG also filed a third-party complaint against Craig Stockmal, the CEO of FII and the sole member and manager of FIT. [ECF No. 26]. Currently

before the Court is Plaintiffs' motion to dismiss Count III of TSG's counterclaims, which alleges a breach of fiduciary duty, and Stockmal's motion to dismiss TSG's third-party complaint. [ECF Nos. 18, 32]. For the reasons set forth below, Plaintiffs' motion, [ECF No. 18], is <u>DENIED</u> and Stockmal's motion, [ECF No. 32] is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I. BACKGROUND

### A. Factual Background

For purposes of this motion, the facts are drawn from the amended counterclaim complaint and amended third-party complaint, [ECF Nos. 16, 26], and relevant documents referred to in each, and are viewed in the light most favorable to TSG. <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014).[1]

Beginning in 1983, Stockmal worked for a company called Uarco, Inc. (later acquired by Standard Register), which supplied business forms. [ECF No. 16 ¶ 8]. Stockmal's first client at Uarco was Liberty Mutual Insurance ("LMI"). [<u>Id.</u> ¶ 9]. By March 2015, Standard Register was experiencing financial difficulties and filed for Chapter 11. [<u>Id.</u> ¶¶ 13–14]. While still employed at Standard Register, Stockmal met with TSG and offered to use two companies he had incorporated, FII and FIT, to obtain business from LMI as Standard Register seemed at risk of losing this lucrative client. [<u>Id.</u> ¶¶ 15–16, 18]. Stockmal encouraged TSG to enter into a written agreement with FII and FIT, which Stockmal drafted and TSG revised, seeking to keep LMI's business with a company he controlled. [<u>Id.</u> ¶¶ 20–23].

---

[1] "A district court may . . . consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008) (quoting <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 20 (1st Cir. 2003)).

On March 16, 2015, Stockmal met with TSG's William James Caan in Boston to discuss a proposed relationship and to review a draft contract outlining the arrangement (the "Agreement"). [ECF No. 26 ¶ 42].[2] Stockmal told Caan that if TSG would perform billing services, Stockmal and his companies would perform all other functions. [Id. ¶ 43]. Although the Agreement itself had no expiration or time limit, TSG states that Stockmal and Caan intended to revisit the Agreement in six months, "after things had settled down." [Id. ¶ 44]. Stockmal and Caan signed the Agreement (with Stockmal signing on behalf of FII and FIT) that same day. [Id. ¶ 44].

The Agreement provided that FI would "act as the relationship manager between TSG and LMI in connection with any contract for goods and services entered into between TSG and LMI at any time" and would "provide the following services: [a]ll communication with LMI, inventory management, stock replenishment, and vendor management." [ECF No. 19-1 at 2–3 (the "Agreement")]. In consideration for these services, TSG and FI agreed that "FI will receive 65% of all gross margins, and TSG will receive 35% of all gross margins." [Agreement at 2]. Further, TSG agreed not to "solicit business directly from LMI or enter into any contract with LMI except through FI," though "[t]he contract for services [would] be between TSG and LMI . . . ." [Id.]. On March 23, 2015, TSG and LMI entered into a master services agreement ("MSA") through which TSG agreed to serve as the primary supplier of paper products for LMI's publishing services group. [ECF No. 16 ¶¶ 41–42].[3] Stockmal, FII, and FIT are not

---

[2] Paragraph 42 of the amended third-party complaint incorrectly cites the date as March 16, 2016. [ECF No. 26 ¶ 42]. The correct date is reflected in the amended counterclaim complaint as the date on which the parties signed the Agreement, March 16, 2015. [ECF No. 16 ¶ 23]; see also [ECF No. 33 at 2, 4].

[3] Stockmal resigned from Standard Register in June 2015 and was soon after sued by the company for soliciting business from LMI, one of its key customers. [ECF No. 16 ¶¶ 30–34].

parties to the MSA nor do they have a direct business relationship with LMI related to sourcing paper products for LMI. [ECF No. 26 ¶¶ 76–77].

TSG states that Plaintiffs failed to act as the relationship manager for LMI as required under their Agreement because Stockmal "attended virtually no meetings, did not handle communications with LMI, and was largely absent from the operation," but was instead focused on developing his software business for FIT. [ECF No. 16 ¶¶ 52–54]. Stockmal had hired Lynn Smith and Lena Spiegel, former employees of Standard Register who were familiar with the LMI account, to assist Plaintiffs with LMI, but "they did not manage the relationship (nor did anyone else working on behalf of FII or FIT)." [Id. ¶¶ 10–12, 17, 55]. This required TSG to perform many of the services it had contracted with Plaintiffs to provide and to expend funds that Plaintiffs should have spent in support of the Agreement. [Id. ¶¶ 55–56, 58–63]. Stockmal purposefully understaffed FII and FIT and did not arrange for the companies to provide the services promised in the Agreement. [ECF No. 26 ¶ 83].

In June 2016, LMI decided to outsource its printing to Novitex Enterprise Solutions, Inc. ("Novitex"), leading LMI to cease purchasing supplies and services from TSG through the MSA. [ECF No. 16 ¶¶ 93–94]. Caan negotiated with Novitex to supply them with paper and other supplies and entered into a master services agreement dated September 12, 2016. [Id. ¶¶ 97–98].[4] Although Caan negotiated and entered into the agreement with Novitex without assistance from Stockmal or Plaintiffs, he wrote to Stockmal on January 30, 2017, stating that the

---

The parties' settlement agreement required Stockmal, FII, and FIT to refrain from communicating with LMI regarding proposed or contemplated business through September 30, 2015, [id. ¶ 36], and Stockmal, FII, and FIT complied with those terms, [id. ¶¶ 37–39].

[4] In 2017, Novitex combined with another company to form a new entity, Exela Technologies ("Exela"). [ECF No. 16 ¶ 113]. The TSG/Novitex agreement was assumed by Exela. [Id.].

arrangement with LMI had changed and offering to split commissions fifty-fifty. [Id. ¶¶ 102–06]. Stockmal appeared to accept this arrangement by accepting and cashing commission checks at this new rate for twenty-seven months. [Id. ¶ 108]. Neither FII nor FIT served as relationship managers for Novitex (and later Exela), though Smith and Spiegel continued to provide "certain subsidiary services on behalf of TSG." [Id. ¶¶ 115–18]. On April 1, 2019, TSG received a demand letter for the original commission rate promised in the Agreement. [Id. ¶ 109].

When Smith and Spiegel did perform tasks on TSG's behalf, they were subject to TSG's control and approval, [ECF No. 16 ¶ 64], and TSG had the "ultimate say" over "how the LMI relationship was to be carried out, what prices would be offered, and what the essential business terms of each transaction would be," [id. ¶ 65]. By November 2017, both Smith and Spiegel had resigned from their employment with Plaintiffs, which further reduced the assistance Plaintiffs were providing to TSG. [Id. ¶¶ 66–69]. Throughout this arrangement, Plaintiffs were operating subject to TSG's ultimate control with regard to the LMI relationship because the MSA was between TSG and LMI. [Id. ¶¶ 70–71].

Stockmal exercised control over both FII and FIT, which were defined collectively as "FI" in the Agreement. [Agreement at 2; ECF No. 16 ¶¶ 26–27]. Stockmal moved money between the two entities and intermingled the activities performed by each. [ECF No. 26 ¶¶ 47, 49]. He held all management positions within FII and did not observe corporate formalities for FII or FIT. [Id. ¶¶ 50, 52, 54]. He also made a series of misrepresentations to TSG in order to cut TSG out of transactions that provided direct commissions to Stockmal and Plaintiffs. [ECF No. 16 ¶ 79]. In addition, after insisting that TSG use one vendor, Bay State Envelope ("Bay State"), to provide supplies to LMI, he then received kickbacks from Bay State of approximately $304,000. [Id. ¶¶ 80–81]. Stockmal never disclosed these kickbacks to TSG, and TSG alleges

5

that he was receiving kickbacks from other vendors, as well. [Id. ¶¶ 81–82]. The kickbacks damaged TSG by inflating the prices they paid to vendors and reducing their profit. [Id. ¶ 83].

### B. Procedural Background

On March 12, 2019, Plaintiffs filed a complaint against TSG in Suffolk Superior Court, [ECF No. 1-1 at 3], and then an amended complaint on May 13, 2019, [id.]. TSG filed its answer and counterclaims on June 3, 2019, [id.], and filed a third-party complaint against Stockmal on June 11, 2019, [id. at 4]. TSG then filed a notice of removal on June 12, 2019. [ECF No. 1]. TSG filed amended counterclaims on July 29, 2019, [ECF No. 16], and an amended third-party complaint against Stockmal on August 30, 2019, [ECF No. 26]. On August 12, 2019, Plaintiffs filed a motion to dismiss Count III of the amended counterclaims. [ECF No. 18]. On September 13, 2019, Stockmal filed a motion to dismiss TSG's third-party complaint against him. [ECF No. 32]. TSG filed oppositions to both motions, [ECF Nos. 25, 34], and Plaintiffs and Stockmal filed replies, [ECF Nos. 31, 37].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III. DISCUSSION

### A. Plaintiffs' Motion to Dismiss Count III of TSG's Counterclaims

In Count III of its counterclaims, TSG alleges that Plaintiffs breached their fiduciary duty to TSG by "obtaining kickbacks from TSG's vendors, making misrepresentations, and by generally failing to put TSG's interests before their own." [ECF No. 16 ¶¶ 144, 135–45]. Plaintiffs seek to dismiss Count III, alleging that it fails to state a claim upon which relief may be granted because Plaintiffs were never TSG's agents nor was there a partnership or joint venture between the parties that would result in a fiduciary duty owed to TSG. [ECF No. 19 at 2, 6].

Instead, Plaintiffs argue that their relationship with TSG was an "arms-length business relationship, not an agency relationship." [ECF No. 19 at 7]. TSG counters that it has presented facts to support its claim and that a breach of fiduciary duty claim cannot be resolved at the motion to dismiss stage. [ECF No. 25 at 2–3].

In Massachusetts, the "essential ingredients" of agency are: "1) the agent's power to alter the legal relationships between the principal and third parties; 2) a fiduciary relationship toward the principal regarding matters within the scope of the agency; and 3) the principal's right to control the agent's conduct in matters within the scope of the agency." CNE Direct, Inc. v. Blackberry Corp., 821 F.3d 146, 150 (1st Cir. 2016) (quoting Sorenson v. H & R Block, Inc., 107 F. App'x 227, 231 (1st Cir. 2004)). Actual authority for an agent to act on behalf of a principal is "a product of 'mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control.'" Id. (quoting Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000)).

As the First Circuit noted in CNE Direct, Inc. v. Blackberry Corp., Massachusetts follows the Restatement (Second) of Agency. 821 F.3d at 150. Under the Restatement,

> [t]o constitute the [agency] relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.

Restatement (Second) of Agency § 1 cmt. b (Am. Law Inst. 1958). Ultimately, "[i]n Massachusetts the proof of agency is held to be ordinarily a question of fact for the jury" and is not appropriately disposed of on a motion to dismiss. See White's Farm Dairy, Inc. v. De Laval Separator Co., 433 F.2d 63, 66 (1st Cir. 1970) (citing Stern v. Lieberman, 307 Mass. 77, 29 N.E.2d 839 (1940)); ZyXEL Commc'ns, Inc. v. Skyworks Sol., Inc., No. 19-cv-11573, 2019 U.S. Dist. LEXIS 213121, at *11 n.4 (D. Mass. Dec. 11, 2019) (denying a motion to dismiss and

noting that whether a party was acting as an agent is not an appropriate issue to decide at the motion to dismiss stage).

The parties both cite to Frontier Management Co. v. Balboa Insurance Co. in support of their contentions. [ECF No. 19 at 7; ECF No. 25 at 5–7]. In Frontier, the district court found that "[t]he mere fact that [plaintiff and defendant] were sophisticated parties involved in a business relationship does not preclude the existence of a fiduciary relationship between them." 658 F. Supp. 987, 990 (D. Mass. 1986). Further, the court stated that, "while an arms length business relationship generally will not give rise to fiduciary duties, if one of the parties is an agent of the other, the agent will be a fiduciary with respect to all matters within the scope of his agency." Id. The court denied plaintiffs' motion to dismiss, noting that the parties' factual dispute regarding the existence of an agency relationship should be resolved at trial, not at the motion to dismiss stage of litigation. Id.

TSG has adequately pled facts to support its contention that Plaintiffs, through the Agreement, consented to and did act on behalf of TSG with regard to the relationship with LMI. TSG alleges that it entered into a contract with Plaintiffs for the express purpose of having Plaintiffs serve as "a relationship manager" between LMI and TSG, subject to TSG's control given that the relationship to be managed was based on the MSA between TSG and LMI. [ECF No. 16 ¶¶ 25, 47, 64, 137–42; Agreement at 2].[5] These allegations support a potential finding that the parties consented to the arrangement and that TSG was a principal in control of Plaintiffs, as agents. See CNE Direct, 821 F.3d at 150 (agency requires authority for the agent to

---

[5] Plaintiffs claim that they could not act as agents of TSG because they were simultaneously engaged in similar relationships with other vendors. [ECF No. 31 at 2]. Under the Restatement, however, a party may act as an agent to multiple principals. See, e.g., Restatement (Second) of Agency § 148 (presenting rule by which an agent may combine orders for multiple principals into one contract).

9

act on the principal's behalf and subject to the principal's control of the agent). Further, TSG alleges that Smith and Spiegel took orders from LMI and placed purchase orders with vendors. [ECF No. 16 ¶¶ 56–57, 63–64, 142]. This is sufficient to support a potential finding that Plaintiffs had the power to bind TSG through their actions. See CNE Direct, 821 F.3d at 150 (an agent has the power to alter the legal relationships between the principal and third parties); Restatement (Second) of Agency § 12 cmt. a (listing the purchase of goods for a principal as an example of an agent's power to alter a legal relationship).

Whether the parties were engaged in an agency relationship is a question of fact for a jury to determine. See White's Farm Dairy, 433 F.2d at 66; Frontier, 658 F. Supp. at 990. In addition, although the Agreement did not specifically refer to the parties' relationship as one of agency, that is not required for a fact-finder to determine that an agency relationship did, in fact, exist between the parties. See Restatement (Second) of Agency § 1 cmt. b. At this stage, TSG has alleged facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs' motion to dismiss Count III of TSG's counterclaims, [ECF No. 18], is therefore DENIED.

**B.    Stockmal's Motion to Dismiss TSG's Third-Party Complaint**

Stockmal seeks to dismiss TSG's third-party complaint against him, which contains seven counts: breach of fiduciary duty (Count I), action for accounting (Count II), unjust enrichment (Count III), tortious interference (Count IV), fraudulent inducement (Count V), corporate officer liability (Count VI), and violation of Chapter 93A (Count VII). [ECF Nos. 26, 32]. In its opposition brief, TSG stipulated to dismissal of Counts IV (tortious interference) and

10

VI (corporate officer liability). [ECF No. 34 at 1].[6] Stockmal's motion to dismiss TSG's third-party complaint, [ECF No. 32], as to Counts IV and VI is therefore GRANTED.

1. Counts I & II: Breach of Fiduciary Duty

TSG alleges that Stockmal breached his fiduciary duties to TSG by "masterminding and carrying out a scheme to obtain kickbacks from TSG's vendors, and by generally failing to put TSG's interests before his own." [ECF No. 26 ¶ 165]. Count I alleges a breach of fiduciary duty while Count II seeks an accounting based on that breach. [Id. ¶¶ 151–75 (Count I), 176–77 (Count II)]. Stockmal argues that, even if Plaintiffs' motion to dismiss Count III is denied, he is still not liable as a fiduciary to TSG based on a theory of subagency. [ECF No. 33 at 7]. TSG counters that Stockmal was a subagent of TSG through Stockmal's relationship with Plaintiffs, but that, even if the Court finds he was not, he is still liable as Plaintiffs' corporate officer. [ECF No. 34 at 3–4].

The Restatement defines a subagent as "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." Restatement (Second) of Agency § 5. Subagents may be employees of the agent or persons appointed for a specific project. See id. Stockmal does not deny that he was Plaintiffs' employee. [ECF No. 33 at 3]. Instead, he argues that "[w]hen a contract binds the agent and the principal, a subagent is not liable to the principal . . . ." [ECF No. 33 at 8]. This, however, misinterprets both the Restatement and case law. In Frontier, the District of Massachusetts reviewed both Supreme Judicial Court precedent and the Restatement in finding the following:

---

[6] TSG states that it will, nonetheless, pursue a corporate officer liability theory, if not claim, against Stockmal as to the remaining counts. [ECF No. 34 at 1, 16–17].

11

> The individual plaintiffs may owe [the principal] fiduciary duties derived from those of [the agent]. Under Massachusetts law, regular employees of an agent may themselves be subagents standing in a fiduciary relation toward a principal, and the subagents may be subject to all the liabilities of the agent '*except liability dependent upon the existence of a contractual relationship between them.*'

Frontier, 658 F. Supp. at 990 (emphasis added) (quoting Rayden Engineering Corp. v. Church, 151 N.E.2d 57, 63 (Mass. 1958)); see also SEC v. Durgarian, 477 F. Supp. 2d 342, 350 (D. Mass. 2007) (citing Frontier).

Stockmal interprets this language to mean that the contract between TSG and Plaintiffs limits his liability as a subagent. [ECF No. 33 at 8]. This language from Rayden, quoting the Restatement, however, indicates only that subagents may not liable to a principal for breach of a contract between the agent and principal. The Restatement states explicitly that "[t]he subagent is subject to the same liabilities and has the same defenses as the agent for conduct violating his duties to the principal, except that he is not subject to liability for breach of contract." Restatement (Second) of Agency § 428 cmt. e (internal citation omitted). While a principal cannot pursue an action against a subagent for failing to perform tasks the agent has contracted with the subagent to provide, a subagent "owes to the principal all the duties of a fiduciary to a beneficiary." Id. at § 428 cmt. a. The court in Frontier confirmed this when it denied a motion to dismiss where there was a contract between the principal and agent, and found that "[t]he individual plaintiffs are alleged to have been either employees of [the agent] or a principal and 'alter ego' of the company. Hence they all may be found to be subagents of [the agent]." 658 F. Supp. at 990.

Whether Stockmal owed TSG a fiduciary duty as its subagent is a factual question that cannot be determined at the motion to dismiss stage. Korper v. Weinstein, 783 N.E.2d 877, 881 (Mass. App. Ct. 2003) (quoting Warsofsky v. Sherman, 93 N.E.2d 612 (Mass. 1950) (stating that there are varied circumstances that can give rise to a fiduciary relationship and that whether such

12

a relationship existed is a question of fact). "On a motion to dismiss, the plaintiff is not obligated to prove that a fiduciary relationship existed. Rather, []he need only put the defendants on notice of h[is] claim." Pearce v. Duchesneau Grp., Inc., 392 F. Supp. 2d 63, 72 (D. Mass. 2005), report and recommendation adopted, No. 04-cv-11409 (D. Mass. Sept. 23, 2005) (denying motion to dismiss). Because TSG has done that here, Stockmal's motion to dismiss Counts I and II of the complaint, [ECF No. 32], is DENIED.

2. Count III: Unjust Enrichment

Stockmal states that TSG fails to state a claim for unjust enrichment, arguing that "[a] cause of action for unjust enrichment by virtue of one's employment relationship is not supported in this jurisdiction." [ECF No. 33 at 10]. TSG contends that its claim is based on funds Stockmal received in connection with the Novitex and Exela relationships (which were outside of the Agreement) and for funds received directly by Stockmal in connection with the alleged kickbacks. [ECF No. 34 at 10].

TSG has alleged that Stockmal held all management positions within FII and was the sole member and manager of FIT, [ECF No. 26 ¶¶ 6–8, 52–53], which Stockmal does not deny, [ECF No. 33 at 2]. TSG claims that Stockmal accepted payment from TSG for work he knew Plaintiffs had not performed in connection with the Agreement, and that Stockmal transferred these payments to his own account. [ECF No. 26 ¶ 198]. In addition, TSG states that payments it made to Plaintiffs for Novitex and Exela sales were outside the scope of the commissions due under the Agreement, [id. ¶ 193], and that Stockmal himself received a portion of these payments, [id. ¶ 194]. As for the kickback scheme, TSG alleges that Stockmal directed some of TSG's vendors to pay kickbacks, which Stockmal himself received. [Id. ¶ 199].

"In Massachusetts, a claim for unjust enrichment does not require consideration, but there must be 'unjust enrichment of one party and unjust detriment to another party.'" Mass. Eye &

13

Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 234 n.7 (1st Cir. 2005)). "Under Massachusetts law, the question of whether a claim [of unjust enrichment] sounds in contract or tort depends upon the nature and essence of the claim." Hiam v. HomeAway.com, Inc., 267 F. Supp. 3d 338, 356 (D. Mass. 2017) (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 448 F. Supp. 2d 244, 262 (D. Mass. 2006)). Where a plaintiff alleges a tort, they "do[] not need to pierce the corporate veil to hold an officer of a corporation 'personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party.'" Townsends, Inc. v. Beaupre, 716 N.E.2d 160, 164 (Mass. App. Ct. 1999); Alves v. Daly, No. 12-cv-10935, 2013 U.S. Dist. LEXIS 45706, at *22 (D. Mass. Mar. 29, 2013) (citing Townsends).

Although, at this stage, the allegations as to Novitex and Exela appear to be at least quasi-contractual, the kickback allegations sound in tort. Having alleged that Stockmal received and kept money through side arrangements, or kickbacks, with TSG vendors through work connected to the Agreement, TSG has adequately pled facts to support an unjust enrichment claim against Stockmal as Plaintiffs' corporate officer. [ECF No. 26 ¶¶ 198–99]. TSG has not, however, alleged an unjust enrichment claim solely in the context of the Agreement. Rather, TSG also claims that Stockmal received and kept money in connection with TSG's extracontractual arrangement with Novitex and Exela. [ECF No. 26 ¶¶ 193–94]. TSG's allegations support an inference that Stockmal personally accepted money by virtue of his contacts with TSG and was personally enriched by his actions.

14

In Frontier, similar allegations between a principal and subagents were found to be sufficient to deny a motion to dismiss. Frontier, 658 F. Supp. at 994 ("[C]ounterclaim defendants . . . have taken enormous sums of money in purported commissions from the program, without regard to their principal . . . ."). At the motion to dismiss stage, where TSG's allegations are taken as fact, TSG has pled facts that sustain a "reasonable inference" that Stockmal "is liable for the misconduct alleged." See Elsevier, 732 F.3d at 80 (quoting Morales-Cruz, 676 F.3d at 224). As a result, Stockmal's motion to dismiss Count III is DENIED.

### 3. Count V: Fraudulent Inducement

Stockmal has moved to dismiss Count V of the third-party complaint, which alleges that he induced Caan to enter into the Agreement, knowing at the time he signed the Agreement on behalf of Plaintiffs that statements within the contract were false and misleading. [ECF No. 26 ¶¶ 213–24]. Stockmal states that TSG's claim must fail because Plaintiffs' alleged nonperformance under the terms of the Agreement is not evidence of fraudulent intent. [ECF No. 33 at 17]. TSG counters that nonperformance alone is not at the heart of their claim, but rather Stockmal's intent, at the time he signed the Agreement, for Plaintiffs not to perform. [ECF No. 34 at 12–13].

In Massachusetts,

> [t]he standards for common law fraud and fraudulent inducement are the same: (1) the statement was knowingly false, (2) defendant[] made the statement with the intent to deceive, (3) the statement was material, (4) plaintiff reasonably relied on the statement, and (5) plaintiff was injured as a result of its reliance.

United States v. President & Fellows of Harvard Coll., 323 F. Supp. 2d 151, 199 (D. Mass. 2004) (citing Turner v. Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 1986) (applying Massachusetts law)). Allegations of fraud typically must be pled with particularity under Federal Rule of Procedure 9(b), setting out "the who, what, where, and when of the allegedly false or fraudulent

15

representation." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004); see Fed. R. Civ. P. 9(b). This specificity requirement, however, is limited to "the particulars of the allegedly misleading statement itself," while "[t]he other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).

TSG has alleged that Stockmal made false representations to Caan during their March 2015 meeting in Boston, when the two met to discuss and sign the Agreement. [ECF No. 26 ¶¶ 45–46, 217–20]. This establishes the who, where, and when required to plead fraud. As to the "what," TSG alleges that Stockmal did not intend Plaintiffs to perform all of the roles outlined in the Agreement, but instead planned to "saddle TSG with most of these roles . . . while he focused on his software development business." [ECF No. 26 ¶ 45]; see also [id. ¶¶ 217–20]. Taking these allegations as true, Stockmal's representations to Caan, as well as the terms of the Agreement, were knowingly false. [Id.]. Further, TSG has adequately pled the remaining elements (materiality, reliance, and injury). [Id. ¶¶ 216, 219 (material terms of the contract), 222–23 (reliance), 223 (harm)].

Stockmal cites Galotti v. United States Trust Co. for the proposition that "[i]ntention not to perform a promise, existing when the promise is made, cannot be shown merely by nonperformance of the promise." 140 N.E.2d 449, 452 (Mass. 1957); [ECF No. 33 at 18]. Galotti, however, was decided at the summary judgment stage, at which time the Court held that "[t]here is no evidence suggesting any motive for action in behalf of the [defendant] contrary to whatever instructions may in fact have been given." 140 N.E.2d at 452. Here, in contrast, TSG has adequately alleged that Stockmal intended to focus on his software business rather than assume all of the roles outlined in the Agreement. See [ECF No. 26 ¶¶ 45, 84]. TSG is not

required to present proof of its allegations regarding Stockmal's motive or intent at this stage of the proceedings.

The amended counterclaims present allegations concerning Stockmal's fraudulent misrepresentations that are "specific as to speaker, content, context, and time. These statements are sufficient to shield the fraudulent misrepresentation count from dismissal at the pleading stage." See Rodi, 389 F.3d at 15. In light of these allegations, Stockmal's motion to dismiss Count V must be DENIED.

4. Count VII: Chapter 93A

Stockmal asks the Court to dismiss TSG's Chapter 93A claim on the grounds that it is a derivative claim of TSG's fraudulent inducement and fiduciary duty claims, which he argues ought to be dismissed. [ECF No. 33 at 20]. TSG argues that its Chapter 93A claim is not dependent and should remain despite the Court's findings as to its other claims. [ECF No. 34 at 18].

Stockmal cites several cases for the proposition that a Chapter 93A claim based on other claims, such as a breach of contract or tort, must be dismissed if the other claims are dismissed. [ECF No. 33 at 20; ECF No. 37 at 7]. For example, in Pimental v. Wachovia Mortgage Corp., the court allowed a motion to dismiss after finding that, "[i]nsofar as the Chapter 93A claim depends upon a breach of a contractual or common law duty to [plaintiff], of which there are none sufficiently alleged, it, too, is unsustainable." 411 F. Supp. 2d 32, 41 (D. Mass. 2006). As the Court has denied Stockmal's motion to dismiss TSG's fraudulent inducement and fiduciary duty claims, his motion to dismiss Count VII of the third-party complaint is DENIED.

## IV. CONCLUSION

Accordingly, Plaintiffs' motion to dismiss Count III of TSG's amended counterclaims, [ECF No. 18], is DENIED.  Stockmal's motion to dismiss TSG's amended third-party complaint against him, [ECF No. 32], is GRANTED as to Counts IV and VI and is otherwise DENIED.

**SO ORDERED.**

March 13, 2020

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE