UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FOCUSED IMPRESSIONS, INC. AND FOCUSED IMPRESSIONS TECHNOLOGY, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| THE SOURCING GROUP, LLC, | * * | |
| Defendant. | * * * | |
| | * | Civil Action No. 19-cv-11307-ADB |
| FOCUSED IMPRESSIONS, INC. AND FOCUSED IMPRESSIONS TECHNOLOGY, LLC, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| LYNN SMITH, | * * | |
| Third-Party Defendant. | * | |

**MEMORANDUM AND ORDER ON THIRD-PARTY DEFENDANT SMITH'S MOTION TO DISMISS AND PLAINTIFFS' MOTION TO DISQUALIFY**

BURROUGHS, D.J.

Focused Impressions, Inc. ("FII") and Focused Impressions Technology, LLC ("FIT") (collectively, "Plaintiffs"), brought this action against The Sourcing Group, LLC ("TSG") alleging breach of contract and unfair and deceptive practices. [ECF No. 1-1 at 5, 16]. FII also filed a third-party complaint against Lynn Smith ("Smith"), the former Chief Operating Officer ("COO") of FII and a former member of FIT. [ECF No. 38 ¶¶ 8, 10]. Currently before the Court is Smith's motion to dismiss the third-party complaint and Plaintiffs' motion to disqualify

Smith's counsel due to an alleged conflict of interest. [ECF Nos. 45, 43]. For the reasons set forth below, Smith's motion to dismiss, [ECF No. 45], is <u>GRANTED</u> and Plaintiffs' motion to disqualify Smith's counsel, [ECF No. 43], is <u>DENIED</u> as moot.

## I.   BACKGROUND

As an initial matter, Smith notes that FIT was not a party to her employment agreement with FII (the "Smith Agreement") and asks the Court to dismiss the third-party complaint against her as to FIT. [ECF No. 46 at 4–5; ECF No. 38-1 ("Smith Ag.") at 1]. Plaintiffs agree that FIT was not a party to the Smith Agreement and state that, despite the case caption on the third-party complaint which would suggest otherwise, FIT is not a party to that complaint. [ECF No. 52 at 2]. The Court will accordingly reference FII as the sole plaintiff in the third-party complaint against Smith. For the sake of clarity, assuming that FIT is a party to the third-party complaint by virtue of the caption, by the agreement of the parties that complaint is dismissed as to FIT.

### A.   Factual Background

For purposes of this motion, relevant facts are drawn from FII's third-party complaint against Smith, [ECF No. 38 ("Compl.")], and relevant documents referred to in the third-party complaint, and are viewed in the light most favorable to FII. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).[1]

Starting in 2015, FII's business was largely focused on managing relationships between paper and envelope suppliers and Liberty Mutual Insurance ("LMI"). [Compl. ¶ 7]. FII employed Smith as Chief Operating Officer ("COO") from May 2015 until she left the company

---

[1] "A district court may . . . consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

2

on November 30, 2017. [Id. ¶ 8]. Smith "was responsible for providing and overseeing customer service," maintaining consistent inventory for LMI, and managing the relationships between FII and its various clients. [Id.]. FIT was formed in 2014 to create and sell software. [Id. ¶ 9]. Smith was a member and equity holder in that company from February 3, 2014 until December 1, 2017, during which time she also acted as the company's COO. [Id. ¶ 10]. In approximately September of 2017, Smith expressed her dissatisfaction with her involvement with FIT and proposed that FIT buy out her membership while also proposing to terminate her employment with FII. [Id. ¶ 11]. Smith and FII entered into a separation agreement, the Smith Agreement, which detailed the services she was to continue to provide as an independent contractor and also included both a mutual release of claims and a confidentiality provision. [Id. ¶ 12; Smith Ag. at 2–4]. The confidentiality agreement which is central to this case defines confidential information as:

> any scientific, technical, trade or business secrets of [FII] or FIT, and any scientific, technical, trade or business materials that [FII] or FIT treats, or is obligated to treat, as confidential or proprietary, including, but not limited to, confidential information obtained by or given to [FII] about or belonging to its suppliers, licensors, licensees, partners, affiliates, customers, potential customers, or others.

[Smith Ag. at 4]. With regard to confidential information, Smith was obligated to "maintain in confidence and not utilize Confidential Information except in performing services for [FII]." [Id.]. She was also required to "not disclose any Confidential Information to any third party, except when specifically authorized in writing to do so for [the] purpose of furthering the business of [FII]." [Id.]. The Smith Agreement was executed on November 10, 2017. [Id. at 7].

Prior to her separation from FII in 2017, Smith had been responsible for working with TSG, one of FII's clients and a supplier to LMI. [Compl. ¶ 17]. Following her separation from FII, Smith, as an independent contractor, continued to provide services to TSG on FII's behalf. [Id. ¶ 18]. As both an employee and an independent contractor, she made $20,000 per month,

though as an independent contractor the rate was adjustable after the first year based on FII's revenue from TSG. [Id. ¶ 22]. From December 1, 2017 through April 30, 2019, TSG made no material complaints to FII about Smith's performance. [Id. ¶ 24]. Beginning around December 2017, in addition to her work for TSG on behalf of FII, Smith began working directly for TSG as its Chief Marketing Officer. [Id. ¶ 36].

Eventually, the relationship between FII, FIT, and TSG "began to deteriorate . . . ." [Compl. ¶ 25]. FII and FIT filed suit against TSG and TSG responded by filing counterclaims. [Id. ¶¶ 26, 29; ECF No. 1-1 ¶ 2]. TSG alleged that Plaintiffs breached their agreement with regards to providing relationship management between TSG and LMI. [Compl. ¶ 30]. FII now alleges that, if there was a breach of its agreement with TSG, Smith is responsible due to her obligations under the Smith Agreement. [Id. ¶ 32].

Smith was exposed to confidential information about FII's clients, including The Regal Press, Inc. ("Regal") and Wright Business Graphics, LLC ("Wright"), including the prices these clients charged LMI for their products. [Compl. ¶ 35]. TSG, Wright, and Regal were all FII's clients, but were also competitors. [Id. ¶ 37]. The complaint alleges that Smith used confidential information about Regal's pricing, which she had either obtained while working for FII or while working as an independent contractor for FII, to attempt to persuade LMI to buy products from TSG that were priced below Regal. [Id. ¶¶ 38–39]. Smith was not successful in these attempts. [Id. ¶¶ 41–43]. Smith later attempted to use Wright's pricing information to offer LMI products from TSG that were priced below Wright. [Id. ¶¶ 44–45]. Her attempts were again unsuccessful. [Id. ¶¶ 46–47].

TSG terminated its agreement with FII and FIT, leading Smith to terminate the Smith Agreement on July 26, 2019. [Compl. ¶¶ 48, 50]. Smith cited the loss of the agreement with

TSG as the basis for her termination of the Smith Agreement. [Id. ¶ 50]. Smith is still employed by TSG. [Id. ¶ 36].

### B. Procedural Background

FII and FIT filed a complaint against TSG in Suffolk Superior Court on March 12, 2019, [ECF No. 1-1 at 3], and an amended complaint on May 13, 2019, [id.]. TSG filed its answer and counterclaims on June 3, 2019, [id.], and then filed a notice of removal on June 12, 2019, [ECF No. 1]. On October 30, 2019, FII filed the third-party complaint against Smith, alleging breach of contract, common law implied contractual indemnity, breach of contract as to confidential information, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relationship, misappropriation of trade secrets in violation of Massachusetts General Laws ch. 93, §§ 42 *et seq.*, and misappropriation of trade secrets in violation of 18 U.S.C. §§ 1831 *et seq.* See [Compl.]. On December 12, 2019, FII filed a motion to disqualify Smith's counsel, who is also representing TSG. [ECF No. 43]. Smith opposed, [ECF No. 50], and FII filed a reply brief, [ECF No. 58]. On December 13, 2019, Smith moved to dismiss the complaint, [ECF No. 45], FII opposed, [ECF No. 52], and Smith filed a reply brief, [ECF No. 61].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan,

513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

### III. DISCUSSION

#### A. Smith's Motion to Dismiss

Smith seeks to dismiss FII's third-party complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  [ECF No. 45 at 2].  In addition to other grounds for relief, Smith states that FII's sole federal claim, violation of the

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq.*, fails to allege an essential element—ownership of confidential information. [ECF No. 46 at 20–21]. FII responds to Smith's DTSA argument regarding ownership by stating only that "the DTSA claim was adequately pled, which uncontestably provides federal question jurisdiction." [ECF No. 52 at 19].[2]

Because the Court agrees that the complaint fails to allege ownership as required by the statute, it will limit its discussion to this ground. FII concedes that dismissal of the federal claim against Smith will strip the Court of subject matter jurisdiction over its state law claims against her. [ECF No. 52 at 19]. Thus, dismissal of the DTSA count results in the third-party complaint against Smith being denied in its entirety.

        1.       <u>FII Fails to Plead an Essential Element of Its DTSA Claim</u>

The Court assumes, for present purposes, that a price list can be trade secret information. Whether a price list may be recognized as a trade secret is a fact-specific inquiry that depends upon whether the prices were made public or kept confidential, and whether the owner took steps to maintain the confidentiality of the information. <u>See</u> <u>J. T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.</u>, 260 N.E.2d 723, 728 (Mass. 1970) (recognizing price list as trade secret or confidential information); <u>E. Bag & Paper Co. v. Ross</u>, No. 07-J-293, 2007 Mass. App. LEXIS 1405, at *13 (Aug. 13, 2007) (holding that public pricing information is not protectable as a trade secret); <u>see also</u> 1 Milgrim on Trade Secrets § 1.09 (2019) ("Although there are somewhat more cases recognizing that [cost and pricing] information may constitute a trade secret, there are also

---

[2] In her reply brief, Smith argues that because the third-party complaint alleged that the Court had subject matter jurisdiction under 28 U.S.C. § 1367(a), FII's statement in its opposition brief regarding "federal question jurisdiction" is inconsistent with its complaint. [ECF No. 61 at 3]. The Court construes FII's statement as a mistake and irrelevant to its analysis.

a substantial number of cases that decide the other way. This does not imply that authority is divided. Rather, it simply suggests that facts presented in some cases have been sufficiently secret to permit relief and, in other cases, not.").

"The DTSA confers a federal cause of action on an owner of a trade secret that has been misappropriated, so long as the trade secret owner has 1) taken reasonable measures to keep such information secret and 2) the information derives independent economic value." Allscripts Healthcare, LLC v. DR/Decision Res., LLC, 386 F. Supp. 3d 89, 94 (D. Mass. 2019) (citing 18 U.S.C. §§ 1836(b)(1) and 1839(3)). Ownership is central to the DTSA, which defines an owner as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed . . . ." 18 U.S.C. § 1839(4).

Other district courts have also recognized ownership as an essential element of a DTSA claim. See AlterG, Inc. v. Boost Treadmills LLC, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) ("To state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" (quoting Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018))); Democratic Nat'l Comm. v. Russian Fed'n, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019) ("[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." (quoting Elsevier Inc. v. Doctor Evidence, LLC, No. 17-cv-05540, 2018 U.S. Dist. LEXIS 10730, at *4 (S.D.N.Y. Jan. 23, 2018))); ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC, 407 F. Supp. 3d 1186, 1197 (W.D. Okla. 2019) ("In order to plead a claim for violation of the DTSA, a plaintiff must allege that it lawfully owned information of independent economic value . . . ."); Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018) ("A

plaintiff bringing a claim under the DTSA must plausibly allege that it . . . 'possessed information of independent economic value' that . . . 'was lawfully owned by' the plaintiff . . . ." (quoting <u>Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.</u>, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018))).

The following allegations are most relevant to Smith's challenges to FII's DTSA claim:

- "**FI created and maintained trade secret information** within the meaning of the Defend Trade Secrets Act; **specifically, the prices at which Regal and Wright sold their products to Liberty Mutual** (the "Trade Secret Information"). **This pricing information was negotiated and set by and between either Wright or Regal, FI, and Liberty Mutual**." [Compl. ¶ 105 (emphasis added)]

- "The secrecy of this information **gives Regal and Wright, and by association FI**, an economic advantage over their competitors . . . ." [<u>Id.</u> ¶ 106 (emphasis added)]

- "The **contractual agreement between Wright and Liberty Mutual and between Regal and Liberty Mutual specifies the purchase price** for each of the products those companies sell to Liberty Mutual.  Pursuant to the terms of those contracts, the purchase price shall be maintained strictly confidential, meaning the information is not generally available to the public.  **FI became privy to Wright's and Regal's pricing information** as part of the relationship management services it provides to those companies pursuant to contractual arrangements with them." [<u>Id.</u> ¶ 109 (emphasis added)]

- "The Smith Agreement specifically required Smith to 'maintain in confidence and not utilize' any confidential information she was privy to from FI's 'suppliers, licensors licensees, partners, affiliates, customers, potential customers, or others.'  This provision encapsulated the Trade Secret Information that Smith used in her effort to win Wright and Regal's business from Liberty Mutual for TSG." [<u>Id.</u> ¶ 111]

- "The requirement in the Smith Agreement to **maintain the confidentiality of FI's suppliers** etc. was intended to protect the financial interests of companies for which FI performed services, as well as FI's own financial interests . . . ." [<u>Id.</u> ¶ 112 (emphasis added)]

- "Smith misappropriated FI's, Wright's, and Regal's Trade Secret Information when she used her knowledge of that Information to offer prices for TSG products, a competitor of both Wright and Regal, at an amount that she knew would undercut the prices that those companies charged to Liberty Mutual." [<u>Id.</u> ¶ 113]

- "Smith's **misappropriation of the Wright's Trade Secret Information**, by using that information to undercut Wright's prices and business, caused actual economic harm to FI . . . ." [<u>Id.</u> ¶ 117 (emphasis added)]

9

Although FII initially makes the conclusory allegation that it "created" Regal and Wright's pricing information, subsequent allegations make clear that even FII believes that the information belongs to Regal and Wright. See [Compl. ¶¶ 105–06, 109, 111–13, 117]. For example, FII "became privy to **Wright's and Regal's pricing information**," Smith needed to "maintain the confidentiality **of FI's suppliers**," and Smith misappropriated "**Wright's Trade Secret Information**." [Id. ¶¶ 109, 112, 117 (emphasis added)]. Furthermore, the pricing information was memorialized in "contractual agreement[s] between Wright and Liberty Mutual and between Regal and Liberty Mutual," to which FII was not a party. [Id. ¶ 109]. If this pricing information belonged to anyone, it was Regal, Wright, and possibly LMI. But, as alleged, this pricing information did not belong to FII.

In a 2016 Massachusetts state court case involving allegations of trade secret violations under Massachusetts law, which also includes ownership as an element of a trade secret misappropriation claim, the Suffolk Superior Court denied a motion to dismiss involving a similar relationship between a supplier and distributor. OBP Corp. v. Welch Allyn, Inc., No. SUCV2016-01496, 2016 Mass. Super. LEXIS 815 (Nov. 15, 2016). In that case, the supplier, rather than the distributor, brought the misappropriation claim against a third party. See id. The court found that

> the Amended Complaint allege[d] that the content of the opportunity report [created by Owens & Minor for OBP] came from the customer names and pricing information in OBP's pricing agreements and that OBP provided those agreements to Owens & Minor on a confidential basis for the sole purpose of facilitating Owen & Minor's fulfillment services. Taking these allegations as true, OBP adequately ple[d] ownership of the confidential customer and sales information found in the opportunity report.

Id. at *9. In contrast, FII's allegations here indicate that it is more akin to distributor Owens & Minor in that FII was in possession of pricing information that belonged to its clients and did not itself own that information.

FII fails to allege that it had "rightful legal or equitable title to, or license in" the pricing information it alleges was a trade secret. See 18 U.S.C. § 1839(4). Having failed to plead an essential element of its DTSA claim, the claim is dismissed. See Twombly, 550 U.S. at 570 (stating that a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face").

          2.      Subject Matter Jurisdiction as to Remaining Claims

Smith argues that if the DTSA claim, which is FII's sole federal claim, is dismissed, the Court must dismiss the remainder of FII's state law claims against Smith because Smith and FII are Massachusetts residents and there is therefore no diversity jurisdiction over those claims. [ECF No. 46 at 20–21]. FII does not dispute that its DTSA claim provided this Court with its sole basis of subject matter jurisdiction over the remaining state law claims against Smith. [ECF No. 52 at 19 ("Smith is correct that if FII's federal claim is dismissed, this court will lack subject matter jurisdiction over the remaining claims.")].

Under 28 U.S.C. § 1367(c), "[a] district court 'may decline to exercise supplemental jurisdiction' if the court 'has dismissed all claims over which it has original jurisdiction.'" Eves v. LePage, 842 F.3d 133, 146 (1st Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)), vacated in part and reinstated in part by 927 F.3d 575, 589 (1st Cir. 2019) (reinstating opinion as to dismissal of state law claims). "The Supreme Court has made pellucid 'that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

FII has not argued that this is an unusual case and, as to the state law claims alleged against Smith, the Court does not find unusual circumstances that would counsel against declining to exercise jurisdiction over the remaining state law claims. As a matter of judicial efficiency, the Court therefore dismisses FII's remaining state law claims against Smith. See Rojas-Velàzquez v. Figueroa-Sancha, 676 F.3d 206, 213 (1st Cir. 2012) ("Because the only federal claims in this suit were properly dismissed, . . . the court's decision not to exercise supplemental jurisdiction over the pendent claims cannot seriously be questioned.").

### B. Plaintiffs' Motion to Disqualify Smith's Counsel

Having dismissed the third-party complaint against Smith, the Court need not address Plaintiffs' motion to disqualify Smith's counsel. That motion, [ECF No. 43], is therefore DENIED as moot.

### IV. CONCLUSION

Accordingly, Smith's motion to dismiss, [ECF No. 45], is GRANTED and Plaintiffs' motion to disqualify Smith's counsel, [ECF No. 43], is DENIED as moot.

SO ORDERED.

April 16, 2020                                        /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE